IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DANIEL GOODACRE,

      Plaintiff,

v.  No._____

CLIENT NETWORK SERVICES, INC.

      Defendant.

# COMPLAINT FOR DAMAGES AND JURY DEMAND

COMES NOW Plaintiff, Daniel Goodacre, by and through his attorneys, Guebert Bruckner P.C., and for his cause of action against Defendant, states as follows:

## JURISDICTION AND VENUE

1.    This action arises under the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 *et seq.* (ADA) and the Civil Rights Act of 1991.

2.    Plaintiff filed his charge of retaliation and discrimination with the Equal Employment Opportunity Commission (EEOC) on September 5, 2007.

3.    Plaintiff received his Right to Sue letter on February 26, 2009.

4.    Plaintiff has exhausted all conditions precedent to the filing of this Complaint.

5.    This Court has jurisdiction over this matter, and venue is proper.

## PARTIES

6.    Plaintiff is a resident of Sandoval County, New Mexico.

7.    Upon information and belief, Defendant is a corporation engaged in business in the State of New Mexico, with its corporate office in Rockville, Maryland.

8.    The incidents which are the subject of this claim occurred in Bernalillo County, New Mexico.

## FACTUAL BACKGROUND

9. Plaintiff was initially employed by Raytheon Company on or about May 2001, as a Systems Analyst.

10. On or about October of 2004, Defendant took over the Information Technology (IT) services contract for Raytheon Company.

11. The IT services contract was entered into between Defendant and the Department of Energy/National Nuclear Security Administration.

12. Prior to the time of Defendant's takeover, Plaintiff's position had been elevated to a Tier III Systems Network Engineer.

13. Plaintiff has cerebral palsy, which substantially limits one or more major life activities and affects his motor skills, coordination, and posture.

14. Plaintiff's condition also affects his back and knees.

15. Plaintiff has a record of his physical impairment which predates his employment with Defendant.

16. Defendant was advised of Plaintiff's physical impairment and resulting disability.

17. Defendant, Client Network Services, Inc., is an employer pursuant to the provisions of the Americans with Disabilities Act of 1990 (42 U.S.C. §12111(5)(A)).

18. Due to Plaintiff's disability, his doctor and physical therapist have prescribed that he take several short walks during the day to relieve back strain.

19. Plaintiff had been taking these walks for years with the knowledge of his supervisors without incident.

20. On May 17, 2007, Plaintiff's Supervisor, Scott Holm, approached Plaintiff and warned him not to take walks during business hours. Plaintiff was told that he would be subject to disciplinary action, including the loss of his job, if he continued to take walks during business hours.

21. On June 11, 2007, Plaintiff sent electronic correspondence to the Site Manager's Office, concerning Mr. Holm's actions on May 17, 2007 and subsequent problems between Plaintiff and Mr. Holm.

22. In that correspondence, Plaintiff recounted the events between Plaintiff and Mr. Holm on May 17, 2007. In addition, Plaintiff stated that Mr. Holm would often come into his cubicle and pretend to kick Plaintiff in the knee. Mr. Holm would also throw "fake punches" at the Plaintiff's stomach or lower back while standing in the common area. Plaintiff further stated that Mr. Holm stuck out his foot while Plaintiff was walking by, causing him to stumble. Plaintiff stated that Mr. Holm would pull out a pocket knife and simulate stabbing the Plaintiff and other co-workers.

23. In the June 11, 2007 correspondence to Site Manager, Bill Simmons, Plaintiff stated that these issues with Mr. Holm had been ongoing for some time, but that Plaintiff never complained because Mr. Holm was his direct supervisor and Plaintiff found Mr. Holm's behavior very threatening. Plaintiff further stated that it was necessary for Plaintiff to take walks throughout the day due to his disability, and that such walks were proscribed by his doctor and physical therapist to relieve back strain.

24. Mr. Simmons did not immediately report Plaintiff's complaint concerning Mr. Holm to Human Resources.

25. On June 21, 2007, Plaintiff approached Mr. Simmons concerning Mr. Holm's actions on May 17, 2007. Mr. Simmons stated that he thought the June 11, 2007 correspondence was sent as a way for Plaintiff to "let off steam."

26. During this meeting on June 21, 2007, Mr. Simmons still had not forwarded Plaintiff's complaint concerning Mr. Holm to Human Resources.

27. Due to Mr. Simmons' failure to act, Plaintiff sent electronic correspondence to Maya Chavez, Director of Human Resources, regarding ongoing problems with Mr. Holm and the need for reasonable accommodations concerning his disability.

28. On June 28, 2007, Mr. Simmons signed Plaintiff's annual Performance Appraisal with "Meets or Exceeds Requirements."

29. In the same annual Performance Appraisal it was noted by Mr. Simmons that "with the reduction of co-workers, all efforts need to be group and project oriented."

30. On July 19, 2007, Plaintiff had a conference call with Mr. Simmons and Ms. Chavez. During this meeting, Mr. Holm was asked to step down as Supervisor of the Operations Group and Plaintiff was told that he was being moved to another building which houses Tier II Support staff.

31. During this conference, Plaintiff was specifically told by Mr. Simmons that he was not being demoted and that Plaintiff was being moved to separate him from Mr. Holm until the situation became less volatile.

32. On July 23, 2007, Plaintiff reported to the Desktop Supervisor, Cary Thomas, who became upset with Plaintiff and informed Plaintiff that he would have no back problems with all of the walking Plaintiff would do as a Tier II Desktop Tech.

33. A Tier II Desktop Tech is a demotion in title and job responsibilities.

34. As a Tier III Systems Network Engineer Plaintiff had Domain Administrator privileges and permissions, which allowed him full rights to everything on the system domain.

35. As a Tier II Desktop Tech Plaintiff lost his Domain Administrator privileges and permissions. Plaintiff was only allowed to work on desktop computers and had no access to any servers or databases, including access to potentially sensitive information.

36. Plaintiff was moved from his group, which was already understaffed, and where he oversaw the work of other employees and was the point of contact for people having problems with the server software, into a desktop position in a group that was already fully-staffed prior to his arrival.

37. The news of Plaintiff's demotion caused him to have a severe anxiety attack related to his disability, requiring Plaintiff to seek medical attention.

38. In the early morning hours of July 24, 2007, Plaintiff woke up to a seizure. Plaintiff had not had a seizure in over nine (9) years and this was only his second seizure in eighteen (18) years. The seizure was brought on by the anxiety attack on July 23, 2007 and the stress of being demoted.

39. On July 25, 2007, Plaintiff was seen by his doctor and received medical excuses requiring that he be allowed to take walks during the day due to his disability and giving him clearance to return to work.

40. On July 26, 2007, Plaintiff received electronic correspondence from Vice President of Human Resources, Geoff Imperatore, stating that the medical excuse allowing Plaintiff to return to work was "unacceptable" and that Plaintiff needed medical clearance that spoke directly to his conditions of cerebral palsy and seizure disorder.

41. On July 27, 2007, Plaintiff sent electronic correspondence to Mr. Imperatore asking that his former position be reinstated and stating that he had called his doctor in response to Mr. Imperatore's request for medical information.

42. On July 30, 2007, Plaintiff sent electronic correspondence to Ms. Chavez, asking that his former position be reinstated.

43. On July 31, 2007, Plaintiff met with the new Site Manager, Wayne Miller, who had taken over the position from Mr. Simmons.

44. During the meeting with Mr. Miller, Plaintiff expressed his desire to return to his position as Tier III Systems Network Engineer and his belief that he had been demoted due to filing a complaint against Mr. Holm.  Mr. Miller continued to question Plaintiff's disability and asked Plaintiff to sign a release of his medical records.  Mr. Miller indicated that the Plaintiff's medical records would be shown to Plaintiff's co-workers.  Plaintiff refused to sign the release.

45. During the meeting with Mr. Miller, Plaintiff stated that he would contact legal counsel if he was not returned to his previous position as a Tier III Systems Network Engineer.

46. During the meeting with Mr. Miller, Plaintiff was asked to leave for lunch and then return to finish the discussion.  Upon Plaintiff's return, Mr. Miller handed Plaintiff termination papers and informed him that he must sign them in order to receive his final pay check.

47. Plaintiff was never told by Mr. Miller why his employment was being terminated, nor did the termination papers specify the reason

### COUNT I.  UNLAWFUL DISCRIMINATION IN VIOLATION OF TITLE I OF THE AMERICANS WITH DISABILITIES ACT OF 1990 (ADA)

48. Plaintiff incorporates by reference the foregoing allegations and makes them part of this Count of the Complaint.

49. Plaintiff is a disabled person within the meaning of ADA, and under the New Mexico Human Rights Act.

50. Defendant denied Plaintiff's requests for reasonable accommodation.

51. Providing a reasonable accommodation to Plaintiff would not have imposed an undue hardship on Defendant's business.

52. Plaintiff was damaged due to being subjected to adverse treatment by Defendant when it failed to reasonably accommodate his disability as alleged in this Complaint.

53. Defendant had no legitimate non-discriminatory reason for subjecting Plaintiff to adverse treatment regarding the terms, conditions and privileges of employment.

## COUNT II.  BREACH OF CONTRACT

54. Plaintiff incorporates by reference the foregoing allegations and makes them part of this Count of the Complaint.

55. Plaintiff's employment was governed by an express and implied contract of employment.

56. At all material times to this action, Defendant represented to Plaintiff verbally, in writing, and by its conduct that it would provide Plaintiff with a work environment and work place free from discrimination, harassment, and hostility.

57. Defendant had knowledge of Mr. Holm's harassing and improper conduct toward Plaintiff and allowed Mr. Holm to continue his employment.

58. Defendant had knowledge that Plaintiff was demoted and forced to leave his team due to filing a complaint against Mr. Holm.

59. Defendant had knowledge that Plaintiff was harassed by Mr. Thomas as a result of filing a complaint against Mr. Holm.

60. Defendant had knowledge that Plaintiff was harassed by Mr. Miller after Mr. Miller continued to ask Plaintiff to sign a release of his medical records even after Plaintiff's doctor had provided Defendant consent for Plaintiff to return to work.

61. Defendant violated Plaintiff's employment contract by discriminating against him on the basis of his disability.

62. As a result of Defendant's breach of its employment contract with Plaintiff, Plaintiff suffered and continues to suffer damages including emotional distress, loss of wages and earning capacity, loss of employment advancement and opportunities, retirement benefits, fringe benefits, insurance, bonuses, and other employee benefits he would have received by for Defendant's breach of the parties' agreement, compensatory damages, pre-judgment and post-judgment interest, and other damages allowed by law.

63. Defendant's conduct was willful, malicious, and in bad faith, thereby justifying an award of punitive damages.

### COUNT III.  BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

64. Plaintiff incorporates by reference the foregoing allegations and makes them part of this Count of the Complaint.

65. The above-described employment contract between the parties has implied in law a covenant of good faith and fair dealing by which Defendant promised to give its full cooperation to Plaintiff in the performance in his duties, obligations, and conditions of the employment agreement and to refrain from any act that would prevent or impede Plaintiff in the performance of his duties, obligations, and conditions of the agreement.  This included a requirement that Defendant refrain from harassing employees or permitting employees to be subjected to harassment in the workplace.

66. Defendant breached its implied covenant of good faith and fair dealing with regard to Plaintiff by allowing him to be subjected to harassing conduct in the workplace.

67. As a result of Defendant's breach of its employment contract with Plaintiff, Plaintiff suffered and continues to suffer damages including emotional distress, loss of wages and earning capacity, loss of employment advancement and opportunities, retirement benefits, fringe benefits, insurance, bonuses, and other employee benefits he would have received by for Defendant's breach of the parties' agreement, compensatory damages, pre-judgment and post-judgment interest, and other damages allowed by law.

68. Defendant's conduct was willful, malicious, and in bad faith, thereby justifying an award of punitive damages.

## COUNT IV.  RETALIATION

69. Plaintiff incorporates by reference the foregoing allegations and makes them part of this Count of the Complaint.

70. Defendant's conducted described in this Complaint, culminating in its termination of Plaintiff, was undertaken to retaliate against Plaintiff for his efforts to file a complaint against Mr. Holm with Ms. Chavez, Director of Human Resources, after Plaintiff's Site Manager at the time, Mr. Simmons, failed to take any action concerning Plaintiff's allegations that Mr. Holm was engaging in discriminatory and threatening behavior.

71. Once Mr. Holm was demoted, Plaintiff was told that he would be moved to another building until the tension between Plaintiff and Mr. Holm died down and that he would not be demoted.

72. Yet Plaintiff was demoted to a position with a lower title and lesser duties, and the hostile work environment was not abated, as evidenced by Mr. Thomas' treatment of Plaintiff on July 23, 2007.

73. Furthermore, Defendant's conduct was undertaken to retaliate against Plaintiff based upon the fact that Plaintiff would not sign a medical record release and threatened to hire an attorney if he was not returned to his former position as Tier III Systems Network Engineer.

74. As the proximate result of Defendant's retaliatory actions, Plaintiff has suffered damages consisting of emotional distress, loss of wages and earning capacity, loss of employment advancement and opportunities, retirement benefits, fringe benefits, insurance, bonuses, and other employee benefits he would have received by for Defendant's breach of the parties' agreement, compensatory damages, pre-judgment and post-judgment interest, and other damages allowed under federal and state law.

## COUNT V.  VIOLATION OF CIVIL RIGHTS ACT OF 1991

75. Plaintiff incorporates by reference the foregoing allegations and makes them part of this Count of the Complaint.

76. The Plaintiff's termination was also in violation of the provisions of Section 102 of the Civil Rights Act of 1991, 42 U.S.C. 1981a, because the Defendant's actions were done with malice or with reckless indifference to the federally protected rights of the Plaintiff under ADA.

WHEREFORE, Plaintiff prays for judgment against Defendant for damages as determined by the Court at trial, together with the costs of this litigation, attorney's fees, past and future lost wages and retirement benefits, any fringe benefits entitled under federal and state law, punitive damages, pre-judgment and post-judgment interest, and for such other relief as the Court may deem just and proper.

**A TRIAL BY JURY IS REQUESTED.**

GUEBERT BRUCKNER P.C.


By     */s/   Christopher   J.   Supik*
          Christopher J. DeLara
          R. Galen Reimer
          Christopher J. Supik
          P. O. Box 93880
          Albuquerque, NM 87199-3880
          (505) 823-2300
          Attorneys for Plaintiff

F:\Clients\7100.019cf\Pleadings\Complaint.doc/dt