IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DANIEL GOODACRE,

          Plaintiff,

vs.                                                 CIVIL NO. 09-387 JB/LFG

CLIENT NETWORK
SERVICES, INC.,

          Defendants.

# REPORT AND RECOMMENDATION[1]
# THAT MOTION FOR SUMMARY JUDGMENT BE GRANTED

THIS MATTER is before the Court pursuant to an Order of Reference [Doc. 34]. The trial Court requested that the undersigned magistrate judge conduct an analysis and take whatever steps reasonably necessary to recommend a ruling on Defendant's Motion for Summary Judgment [Doc. 30].

## Procedural Background

Defendant Client Network Services, Inc. ("CNSI") filed its Motion for Summary Judgment on November 17, 2009. Plaintiff Daniel Goodacre ("Goodacre"), a *pro se* litigant, failed to respond to the motion and failed to seek additional time to respond. The time for filing a response elapsed.[2]

---

[1] Within fourteen (14) days after a party is served with a copy of this analysis and recommended disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such analysis and recommendation. A party must file any objections within the fourteen-day period allowed if that party wants to have appellate review of the analysis and recommendation. If no objections are filed, no appellate review will be allowed.

[2] This is not Goodacre's first failure to respond. On July 31, 2009, Goodacre was served with CNSI's discovery requests. Goodacre's attorney notified opposing counsel of his firm's intent to withdraw and requested an extension of time for Goodacre to respond to the outstanding discovery requests. CNSI agreed to an extension until September 25, 2009. Goodacre failed to provide any responses to the discovery requests.

On October 23, 2009, CNSI filed a Motion to Compel [Doc. 27]. Goodacre neither responded to the motion nor did he seek any extension of time within which to respond.

Failure to respond to a motion constitutes consent to grant the motion. D.N.M.LR-Civ. 7.1(b). However, the Tenth Circuit advises that a trial court should not grant a motion for summary judgment solely because a party fails to respond. Reed v. Bennett, 312 F.3d 1190, 1194 (10th Cir. 2002). Granting a motion for that reason would constitute a sanction under Ehrenhaus v. Reynolds, 965 F.2d 916, 920 (10th Cir. 1992), and should be used only as a last resort.

Therefore, the Court will not recommend granting CNSI's Motion for Summary Judgment as a sanction for failing to respond, but, rather, will consider the motion on the merits. However, Goodacre's failure to respond precludes him from challenging the material facts on which CNSI relies for purposes of its motion. Reed v. Bennett, at 1195.

## **Undisputed Material Facts**[3]

1. Goodacre was "employed by CNSI commencing on October 1, 2004." [Doc. 30, at 2; Ex. 1, Release and Severance Agreement].

2. Goodacre was employed "as a Systems Administrator in the National Nuclear Security Administration ("NNSA") Service Center Operations Group." [Doc. 30, at 2; Ex. 2, e-mail from Goodacre to Maya Chavez).

3. Goodacre was terminated at CNSI on July 31, 2007. [Doc. 30, at 2; Ex. 1 at p. 1].

4. Following his termination, Goodacre signed a Release and Severance Agreement, which stated:

> In exchange for a payment to Employee by CNSI in the amount of $2,744.00, Employee hereby fully, forever, irrevocably and unconditionally releases, remises and discharges CNSI . . . from any

---

[3]As heretofore indicated, Goodacre was served with the Motion for Summary Judgment and was apprised of the factual allegations on which CNSI was relying. Although given an opportunity to contest these alleged undisputed facts by submission of evidence, deposition testimony, answers to interrogatories, exhibits, or affidavits, Goodacre chose not to respond. The failure to respond constitutes an agreement that the facts on which CNSI relies are undisputed. Reed v. Bennett, at 1195. Accordingly, the Court accepts CNSI's assertions as undisputed facts.

>and all claims, charges, complaints, demands, actions, causes of action, suits, rights . . . damages . . . of every kind and nature, known or unknown, which Employee ever had or now has against the CNSI Released Parties including, but not limited to, all claims arising out of Employee's employment with or separation from CNSI, the Employment Agreement, all claims and damages relating to . . . handicap . . . discrimination, all employment discrimination claims under any federal or state discrimination law, statute or regulation, and any claims, actions, or suits, whether at law or equity, including, but not limited, actions in tort, defamation, breach of contract and any claims under any other federal, state or local statutes or ordinances not expressly referenced above.

[Doc. 30, at 2; Ex. 1, Release at ¶ I.].

    5.  "The payment of $2,744.00 exceeded the benefits [Goodacre] was entitled to by contract or law."  [Doc. 30, at 2; Ex. 3, Affidavit of Maya Chavez, at ¶¶ 3, 5].

    6.  Goodacre "was afforded seven (7) days to consider the Release and was given the opportunity to consult with an attorney prior to signing." [Doc. 30, at 2; Ex. 1 at ¶ VI.].

    7.  Goodacre "also agreed that 'Employee has read this document and understands the contents herein, and freely and voluntarily assents to all of the terms and conditions contained herein.'" [Doc. 30, at 3; Ex. 1 at ¶ VI].

    8.  "The Release 'contains and constitutes the entire understanding between the parties hereto' and 'cancels all previous oral and written negotiations . . . .'" [Doc. 30, at 3; Ex. 1 at ¶ IV].

    9.  "The Release is governed by the laws of the State of Maryland to the extent not preempted by federal law." [Doc. 30, at 3; Ex. 1 at ¶ V].

    10.  Goodacre's "education and business experience demonstrate that he was fully able to understand that he was waiving his right to sue CNSI. [Goodacre] holds a business decree from Albuquerque T-VI . . . which he obtained in 1994." [Doc. 30, at 3; Ex. 4, Goodacre's Application for Employment].  Further, as of July 2007, [Goodacre] had almost fourteen years of experience working in the information technology field.  He "held certifications as a Microsoft Certified

Professional Systems Engineer, a Microsoft Certified Systems Administrator, a Microsoft Certified Professional + Internet, and a Microsoft Certified Professional." [Doc. 30, at 3; Ex. 5]. Goodacre "also had experience developing security policies, managing anti-virus solutions, building and maintaining servers, and writing technical instructions." [Doc. 30, at 3; Ex. 5].

11. "Prior to his termination [Goodacre] authored e-mails demonstrating that he knew of his legal rights under the Americans with Disabilities Act ("ADA") at the time he signed the Release on July 31, 2007. These e-mails stated, <u>inter alia</u>, that he believed he had a disability and that he believed that he was being harassed by his supervisor, Scott Holm. He titled one of these e-mails 'Regarding the Scott Holm harassment issue.' He also referred to his 'harassment complaint' and referred to himself as a complainant. He further wrote that 'This is becoming an issue that may need a legal recourse to get it finally resolved.'" [Doc. 30, at 3-4; Ex. 2].

12. On April 21, 2009, Goodacre filed his lawsuit "alleging discrimination in violation of the . . . [ADA], breach of contract, and breach of the implied covenant of good faith and fair dealing." [Doc. 30, at 4; Doc. 1].

## Analysis

In <u>Wright v. Southwestern Bell Telephone Co.</u>, 925 F.2d 1288, 1291-92 (10th Cir. 1991), the Circuit advised that an employee may waive potential employment claims by agreement so long as the employee's waiver of claims is knowing, willing and voluntarily, considering the totality of the circumstances. *See also* <u>Torrez v. Pub. Serv. Co. of New Mexico, Inc.</u>, 908 F.2d 687, 689 (10th Cir. 1990).

A release is a contract. The Court will enforce contracts between or among parties unless they are unconscionable or procured by fraud, duress or misrepresentation. <u>Hendren v. Allstate Ins. Co.</u>, 11 N.M. 506, 508, 672 P.2d 1137, 1139 (Ct. App. 1983). It is not the province of the Court to

4

determine whether a party's decision to enter into a contract was imprudent or ill-advised. State ex rel. Ackerman v. City of Carlsbad, 39 N.M. 352, 47 P.2d 865 870 (1935).  Rather, in the absence of unconscionableness, fraud, duress or misrepresentation, a party will be held to the basis of his bargain. Ramirez-Eames v. Hover, 108 N.M. 520, 522, 775 P.2d 722, 724 (1989).

In this case, the undisputed facts show that the Release entered into by Goodacre was knowing, willing and voluntary.  He has not offered any evidence demonstrating fraud, misrepresentation or coercion.  Nor is the Release unconscionable.  When, as here, a party is aware of the existence of protections under the ADA; is aware that he has claims for harassment by a supervisor; is aware that a release provides him with more money than he was entitled to under any employment agreement or contract at the time of the execution of the Release; and when he has been given ample opportunity to consult with counsel or to withdraw from the agreement had he changed his mind, he is unable to demonstrate coercion.

The parties agreed to a choice-of-law provision in the Release.  Specifically, the parties agreed that Maryland law would apply.  In this regard, Maryland law is no different than New Mexico's.  Maryland provides that a contract is enforceable unless it was procured by fraud or duress. Gingell v. Backus, 246 Md. 83, 88-89, 227 A.2d 349, 351-52 (1967).  Moreover, when a party seeks to set aside a release under Maryland law, the burden of proof required is greater than a simple preponderance of the evidence. Gingell, 246 Md. At 89-90 ("[t]he burden of proof required of the plaintiff in an action at law, attacking the validity of a release for the purpose of setting it aside, is greater than the burden of proof by preponderance of the evidence . . . .").

Goodacre submitted no evidence whatsoever.  Not only is there an absence of evidence beyond a preponderance, there is a total absence of evidence to support fraud, duress or coercion.

Under New Mexico law, before a court can conclude that a party knowingly, willingly and voluntarily waived rights to assert claims of discrimination, a court must consider the totality of the circumstances.  Torrez v. Pub. Serv. Co. of New Mexico, Inc., at 689-90.

The factors outlined by our Circuit in Torrez include: (1) the clarity and specificity of the release language; (2) the plaintiff's education and business experience; (3) the amount of time plaintiff had for deliberation about the release before signing it; (4) whether the plaintiff knew or should have known his rights upon execution of the release; (5) whether plaintiff was encouraged to seek, or in fact received, benefit of counsel; (6) whether there was an opportunity for negotiation of the terms of the agreement; and (7) whether the consideration given in exchange for the waiver and accepted by the employee exceeds the benefits to which the employee was already entitled by contract or law.

### Release Language Clearly and Specifically Refers to Release of All Claims, Including Discrimination Claims on the Basis of Handicap

The Release language is clear and specific, and is quite similar to that involved in Wright v. Southwestern Bell Telephone Co., *supra*, where the court found that a severance agreement was clear, unambiguous, and specific.  The language in Wright waived Wright's subsequent Title VII claims against the employer.  In this case, the Release stated that Goodacre was fully releasing CNSI from any and all claims, and specifically referred to "all claims and damages relating to . . . handicap" and "all employment discrimination claims under federal or state law . . . ."

Given Goodacre's education, skill, experience and specific knowledge of employment claims, the Release language was abundantly clear that he was waiving his rights to bring claims under the ADA or any claims related to his employment or separation from employment.

### Goodacre's Education and Business Experience

There is no fact before the Court that demonstrates that Goodacre's experience, education,

or ability to understand was deficient. He had extensive employment experience in a highly technical area, is a graduate of a technical institute, and has earned significant credentials in the area of information technology. His education and business experience are sufficient to allow the presumption that he was able to understand the implications of the Release. Reed v. Nellcor Puritan Bennett, 244 F. Supp. 2d 1205, 1211 (D. Kan. 2003).

### Amount of Time for Deliberation

Goodacre was afforded adequate time to consider the Release and to seek counsel. The undisputed facts confirm that Goodacre was given seven days after execution of the Release to deliberate and withdraw from the Release. There is no evidence before the Court that the seven-day time period was inadequate or that Goodacre sought to withdraw from the provisions of the Release within the time provided.

### Goodacre Knew His Rights When He Signed the Release

The undisputed evidence includes e-mails authored by Goodacre threatening to take legal action to pursue a disability discrimination complaint against a supervisor. These e-mails were circulated prior to his termination. It is clear he knew of the existence of rights under the ADA and, generally, under Title VII.

In Wright, the Tenth Circuit found that the plaintiff was aware of his rights as demonstrated by the fact that he filed discrimination charges at the time of his termination. Wright 925 F.2d at 1292-93. While Goodacre did not file an EEOC complaint prior to his discharge, he threatened to take legal action and complained about harassment by a supervisor due to an alleged handicap or disability.

### Adequacy of Consideration

It is undisputed that Goodacre received a lump-sum payment in exchange for the Release.

Moreover, the $2,744 payment he received exceeded the benefits Goodacre was entitled to by contract or law. [Maya Chavez Affidavit, ¶¶ 3, 5].

It matters not that Goodacre may well have recovered more money had he pursued a Title VII lawsuit. The issue is not whether he could have received more money, but whether he received something of value to which he was not already unquestionably entitled. Wright v. Souothwestern Bell Telephone Co., at 1292.

### Ability to Negotiate

Goodacre submitted no evidence demonstrating any attempt to negotiate the terms of the severance agreement or evidence showing denial of an opportunity to negotiate. Moreover, even if the evidence would have supported a "take-it-or-leave-it" approach by CNSI (and there is no evidence to support that possibility), so long as a party knows he is giving up important rights, receives benefit, and was not forced or coerced to give up the rights, his decision to waive the rights will be enforced. Rutledge v. Int'l Bus. Machines Corp., No. 91-1385, 1992 WL 1891005, at *4 (10th Cir. Aug. 6, 1992).

The evidence in this case demonstrates that Goodacre knew his rights at the time he signed the Release and understood that by signing the Release he was giving up his right to recover from CNSI for disability discrimination. In the absence of any evidence to support a "take-it-or-leave-it" position, the Court cannot find that the lack of opportunity to negotiate should negate the Release.

### Conclusion

The undisputed facts in this case and the law on contracts and releases, both in Maryland and New Mexico, demonstrate under the totality of the circumstances that CNSI is entitled to judgment as a matter of law.

## **Recommendation**

It is recommended that CNSI's Motion for Summary Judgment be GRANTED.

                                       *Lorenzo F. Garcia*
                                       Lorenzo F. Garcia
                                       United States Magistrate Judge